# 96 DTA 138

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL II, BAYAMON

JUAN CARLOS GONZALEZ CRUZ REPRESENTADO
POR SUS PADRES VICTOR L. GONZALEZ Y TERESITA CRUZ
Demandantes-Apelantes

v.

XIOMARA PADILLA MATIAS REPRESENTADA
POR SUS PADRES SR. PADILLA Y SRA. MATIAS DE PADILLA
Demandados-Apelados

Núm. KLAN-96-00187

San Juan, Puerto Rico, a 23 de septiembre de 1996

Panel integrado por su presidenta, la Jueza Ramos Buonomo
y los Jueces Ortiz Carrión y Cordero

Cordero, Juez Ponente

### TEXTO COMPLETO DE LA SENTENCIA

Los demandantes-apelantes nos solicitan la revisión de una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón el 27 de marzo de 1995 y archivada en autos copia de la notificación de la sentencia el 1 de febrero de 1996. En dicha sentencia se desestimó una acción de impugnación de reconocimiento por falta de jurisdicción sobre el niño. Procede revocar.

### I

Se trata del joven Juan Carlos González Cruz, *("Juan Carlos"),* a quien a la edad de diecinueve (19) años se le imputó ser padre de un niño llamado Carlos Hirán González Padilla *("Carlos Hirán"),* hijo de la demandada, Xiomara Padilla Matías *("Xiomara"),* quien también era menor de edad cuando nació el niño. Juan Carlos, representado por sus padres con patria potestad, presentó demanda dentro del plazo fatal de tres meses desde la fecha de reconocimiento, para impugnar dicho reconocimiento por vicio en el consentimiento, según dictado por el Artículo 17 del Código Civil, 31 L.P.R.A. sec. 465 y resuelto por el caso de *Almodóvar v. Méndez Román,* 125 D.P.R. 218, 261 (1990). En su demanda, Juan Carlos alega, en síntesis, entre otras cosas, que:

*"sin mediar consentimiento ni conocimiento de sus padres, quienes tienen la patria potestad y custodia sobre el mismo Juán Carlos, por medio de coacción y amenazas, procedió a reconocer un hijo habido por Xiomara Padilla Matías, quien es también menor de edad y vecina de Toa Baja, Puerto Rico. El nombre dado al niño es Carlos Hirán González Padilla".* (Énfasis nuestro.) Véase párrafo 3 de la demanda. Sin embargo, en el epígrafe de la demanda Juan Carlos no incluyó como parte demandada al niño representado por su madre, Xiomara, y ésta a su vez representada por sus padres por ser ella menor de edad. No obstante, en la súplica de la demanda se solicita claramente que: (a) se declare nulo el consentimiento dado por Juan Carlos para el reconocimiento del niño, y (b) que se ordenen pruebas de laboratorios para determinar definitivamente que Juan Carlos no es el padre como así se le imputaba en un proceso criminal que se había iniciado en su contra.

El Tribunal de Primera Instancia ordenó a Juan Carlos, Xiomara y al niño: (1) a presentarse al Laboratorio de Inmunología del Recinto de Ciencias Médicas, donde le tomarían fotografías a los tres participantes; (2) a llevar identificación adecuada cada uno de ellos; y (3) a someterse a un examen de *"DNA".* (Orden del 4 de octubre de 1994.)

Luego de hacerse las correspondientes pruebas, el médico especialista del laboratorio concluyó que:

*"El señor Juan C. González Cruz no puede ser el padre de Carlos H. González ya que no aporta la región genética estudiada por la sonda SLI309, SLI737, SLI479, del locus D17S79, D12S11, D4S163, presentes en el menor."*

Además, existe prueba ante el Tribunal de Primera Instancia de una empresa especialista en el campo de pruebas *"DNA",* Lifecodes Corp., que concluyó:

*"The alleged father, Juan C. González Cruz, is excluded as the biological father of the child, Carlos H. González, because he lacks the genetic markers that must be contributed to the child by the biological father."*

Es notable que dicha empresa, Lifecodes Corp., indicó en su informe:

*"Lifecodes Corporation has a Certificate of Accreditation from the American Association of Blood Banks for DNA paternity testing."*

## II

Es norma reconocida que el procedimiento, puro elemento formal, no debe utilizarse para derrotar derechos sustantivos de una parte. *Moa v. E.L.A.*, 100 D.P.R. 573t 586 (1972). El deber esencial del poder judicial es el de impartir justicia y de hallar en cada litigio la verdad. *Coll v. Picó*, 82 D.P.R. 27, 38 (1960). No debe aplicarse ninguna regla doctrinal o aforismo jurídico que tenga el efecto en un caso específico de crear una injusticia. *Millán v. Caribe Motors Corp.*, 83 D.P.R. 494, 508 (1961). No puede frustrarse la justicia en nombre de reglas que se originaron con el propósito de facilitar su administración. *Id.*

Nuestro Tribunal Supremo ya ha advertido que se *"hará todo lo que esté a su alcance para que los casos sean resueltos en los méritos y no por sutilezas legales de alegaciones y procedimientos... [y que] hace tiempo los tribunales han abandonado la teoría de que impartir justicia constituye un juego. Los litigantes deben hacer lo mismo. Ninguna parte en un procedimiento tiene un interés adquirido en los errores gramaticales y de procedimiento incurridos por su adversario."* Reyes Castillo v. Cantera Ramos, Inc., ___ D.P.R. ___ (1996), **96 J.T.S. 9**, pág. 605. Señaló además el Tribunal Supremo que *"[e]n ocasiones los trámites judiciales se complican innecesariamente e impiden que las controversias puedan resolverse en forma justa, rápida y económica conforme lo dispuesto en la Regla 1 de Procedimiento Civil." Id.*

En Reyes Castillo, varios demandantes, en su nombre propio, presentaron demandas de daños y perjuicios reclamando daños a sus propiedades, pero sin incluir el nombre de las sociedades de bienes gananciales, partes indispensables en el pleito, por ser éstas las verdaderas dueñas de las propiedades. A pesar de haber pasado el término prescriptivo para las sociedades de bienes gananciales presentar sus demandas, nuestro Tribunal Supremo resolvió que brindándole una interpretación liberal y razonable de todas las alegaciones en conjunto, tomando en consideración el epígrafe y la súplica de la demanda, procedía el concluir que los demandantes habían hecho también reclamaciones en representación de sus respectivas sociedades de bienes gananciales. Expresó nuestro Tribunal Supremo que *"esta interpretación de las alegaciones, indiscutiblemente cumple con el propósito de hacer justicia sustancial sin violentar el debido proceso de ley."*

En el caso de autos, Juan Carlos, representado por sus padres, presenta una demanda de impugnación de reconocimiento, alegando vicio en el consentimiento, dentro del término de caducidad de los tres meses que dispone la ley. Sin embargo, como anteriormente señalamos, no incluyó como parte demandada al menor en el encabezamiento de la demanda.

En *Almodóvar v. Méndez, supra*, nuestro más alto foro judicial determinó que lo importante en una acción de impugnación de reconocimiento de un hijo tenido fuera del matrimonio es probar la existencia de vicios en el consentimiento, porque de lo contrario el reconocimiento sería uno irrevocable al ser contrario a la política pública el arrepentirse.

Nuestro Tribunal Supremo mediante *"Sentencia"*, ▪ en *Oaks Reyes v. Ortiz Aponte*, ___ D.P.R. ___(1994), **94 J.T.S. 69**, señaló que el no haber incluido como parte demandada al menor, en un caso sobre *"impugnación de paternidad", la demanda adolece del defecto de parte indispensable"*, según indicado en la Regla 16.1, Reglas de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III. En dicha Sentencia, a la página 11886, nuestro Tribunal Supremo ordenó al tribunal de instancia, a que con respecto al punto del defecto de parte indispensable, *"deberá actuar conforme a la norma establecida por nuestra jurisprudencia. Meléndez Gutiérrez v. E.L.A., 113 D.P.R. 811, 816 (1983)."*

El caso de Meléndez Gutiérrez, *supra*, págs. 815-816, explica que:

*"... de acuerdo con las disposiciones de la Regla 16.1 y de la Regla 18 de las de Procedimiento Civil de 1979, la omisión de una parte indispensable, aunque es motivo para desestimar un pleito, no constituye impedimento para que, a solicitud de la parte interesada, el tribunal pueda conceder la*

*oportunidad de traer al pleito a la parte originalmente omitida, siempre y cuando el tribunal pueda adquirir jurisdicción sobre la misma".*

En Oaks Reyes, el demandante alegó como único fundamento para la *"impugnación de paternidad",* que tenía dudas si la menor era hija de él. Distinto al caso de autos, el cual consiste en una impugnación del reconocimiento a consecuencia de vicio en el consentimiento, el reconocedor no planteó la existencia de algún vicio en el consentimiento en Oaks Reyes. ▮ Interpretando el caso de Oaks Reyes a la luz de lo resuelto por Reyes Castillo, vemos claramente que en el caso ante nos se desprende del epígrafe, las alegaciones y la súplica de la demanda, e interpretando éstas liberalmente con el fin de hacer justicia, que el demandante incluyó a todas las partes para hacer valer su reclamación impugnando su consentimiento. *"La demanda, aunque no es un ejemplo de lo que debe ser una alegación bien hecha, cumple cabalmente con el propósito de informar a los demandados, a grandes rasgos, las reclamaciones en su contra y a quiénes pertenecen estas reclamaciones. Estos estuvieron razonablemente prevenidos de lo que se le reclama." Reyes Castillo, supra,* pág. 606. Un tribunal está obligado a interpretar conjuntamente todas las alegaciones de un pleito con el propósito de hacer justicia. Regla 6.6, Reglas de Procedimiento Civil de 1979, 37 L.P.R.A. Ap. III, R. 6.6; *Moa v. E.L.A., supra,* pág. 586. En el caso ante nos de una simple lectura de las alegaciones de la demanda con el propósito de hacer justicia se desprende claramente que el niño Carlos Hirán fue incluido como parte en el pleito. Cometió error el foro *a quo* al resolver lo contrario. No podemos permitir que en este caso por el hecho de no haberse incluido en el epígrafe de la demanda como demandando al menor, el reconocedor en este caso no pueda tener su día en corte para probar el alegado vicio en su consentimiento al reconocer a dicho menor. Como hemos señalado, Juan Carlos, a quien se le imputa ser padre del niño Carlos Hirán, presentó demanda de impugnación dentro de los tres (3) meses luego del reconocimiento, cumpliendo así con la rigurosa ley de impugnación de paternidad. El cumplir con ese término es mandatorio y constituye derecho sustantivo en nuestro Ordenamiento Jurídico. Por ende, es claro, que en este caso se cumplió con el derecho sustantivo al presentar demanda de impugnación a su debido tiempo, pero por error, no se incluyó en el epígrafe de la demanda el nombre del niño Carlos Hirán. Este error es uno de forma y para corregirlo es necesario acudir al vehículo apropiado, o sea acudir a nuestro derecho procesal según dispuesto en las Reglas de Procedimiento Civil. *"El procedimiento puro formal, no debe obstaculizar ni derrotar el derecho sustantivo de las partes cuando de las alegaciones surge la calidad de las partes." Sánchez Rodríguez v. López Jiménez,* 116 D.P.R. 172, 189 (1985). Recordemos que *"[c]ualquier defecto en la denominación del pleito o en la súplica del remedio, no será óbice para que el tribunal conceda el remedio que proceda de acuerdo con las alegaciones y la prueba."* Regla 70, Reglas de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III, R. 70. En este caso se intentó corregir un error procesal mediante el uso del derecho procesal. El demandante solicitó enmendar la demanda para incluir en el encabezamiento de la misma al niño Carlos Hirán. Sin embargo, tal intento fue uno infructuoso al no permitirse el mismo. Erró el tribunal de instancia al no permitir tal enmienda. El término de tres (3) meses señalado por el foro *a quo* en su sentencia no es aplicable a errores procesales. Queda a la sana discreción del tribunal el término para presentar enmiendas a la demanda. Regla 13.1, Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. II, R. 13.1.

Sabemos que la Regla 4.4(b) de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que se hará el diligenciamiento del emplazamiento *"a una persona menor de catorce (14) años de edad, entregándole copia del emplazamiento y de la demanda a su padre con patria potestad o tutor."* Los requisitos para el emplazamiento son de cumplimiento estricto. *Rodríguez v. Nasrallah,* 118 D.P.R. 93, 98 (1986). Con ello se persigue que se le notifique al demandado que se instó una acción judicial en su contra de manera que se le de una oportunidad de ser oído y defenderse. *Id.* En el presente caso el emplazamiento del niño Carlos Hirán hubiese tenido que hacerse a través de Xiomara, y los padres de ésta por ser ella menor de edad, pero mayor de catorce (14) años, Regla 4.4 (b). Sin embargo, ya éstos fueron debidamente emplazados, tenían notificación de la impugnación del reconocimiento según las alegaciones de la demanda, y han comparecido defendiendo los intereses tanto de Xiomara como del niño, Carlos Hirán. En estas circunstancias, y recuérdese que el debido proceso de ley es circunstancial y prágmatico; la falta de notificación de un emplazamiento no suscita una lesión de derecho con potencialidad de inquietar lo juzgado. *Alicea Alvarez v. Valle Bello, Inc.,* 111 D.P.R. 847, 852 (1982). Pero en este caso hacemos énfasis en que la madre, Xiomara, una menor de edad debidamente representada por sus padres, compareció defendiendo militantemente sus propios intereses y los intereses del niño Carlos Hirán, y nunca levantó como defensa especial la falta

de diligenciamiento o la falta de jurisdicción *in personam* sobre dicho niño, a pesar de las alegaciones de la demanda. Siendo esto así, se entiende renunciada la defensa de falta de jurisdicción *in personam* sobre el niño. ■ Regla 10.8, Reglas de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III. El foro *a quo* hizo caso omiso a este hecho al desestimar la demanda por falta de jurisdicción *in personam* sobre el niño.

El permitir enmendar la demanda bajo la Regla 13.1, Reglas de Procedimiento Civil, para corregir un error de forma e incluir al niño en el encabezamiento de la demandada, es permisible bajo los hechos particulares de este caso, especialmente considerando que *"...el permiso se concederá liberalmente cuando la justicia así lo requiera."* Regla 13.1. En esta circunstancia, la enmienda se retrotrae a la fecha de la presentación de la demanda. Regla 13.3, Reglas de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III, R. 13.3.

Debemos señalar que la referida prueba de *"DNA"* es una muy certera y casi exacta. *Calo Morales v. Cartagena Calo*, ___ D.P.R. ___(1991); **91 J.T.S. 73**, pág. 8959, escolio 6; *Ortiz v. Peña,* 108 D.P.R. 458 (1979). ■ De no refutarse en su día que la prueba hecha excluye a Juan Carlos como padre biológico y de que fue coaccionado y amenazado para que reconociera al niño, entonces sería un acto inmoral el que una madre continúe con un pleito en el cual se le atribuye la paternidad a un joven sabiendo que él no es el verdadero padre. Además, extenderle a esa madre el poder de los tribunales para coaccionar alimentos bajo amenaza de encarcelamiento a un joven quien sabe no es el verdadero padre, constituye, a nuestro juicio, proveerle un arma muy poderosa a una mujer para apoyar una injusticia y tal vez un fraude contra un hombre inocente. Las puertas de los tribunales deben estar siempre abiertas para los que buscan justicia, y cerradas para los que intentan una injusticia.

## III
Por los fundamentos expuestos, se revoca la sentencia del Tribunal de Primera Instancia, y se devuelve el caso al foro *a quo* para continuar los procedimientos en conformidad con la sentencia aquí dictada.

La Jueza Ramos Buonomo disiente con opinión escrita.

Lo acuerda y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 96 DTA 138

**1.** Una *"Sentencia"* emitida por nuestro Tribunal Supremo no establece jurisprudencia que resulte obligatoria tanto para este Tribunal como para el Tribunal de Primera Instancia, a diferencia de una *"Opinión"* de nuestro máximo foro judicial. Véase *Rivera Rivera v. Insular Wire Products, Corp.*, ___ D.P.R. ___ (1996), **96 J.T.S. 76**, pág. 1178, Opinión Concurrente del Juez Asociado, Sr. Rebollo López. Sin embargo, una *"Sentencia"* de nuestro más alto foro judicial tiene para este Tribunal un gran poder persuasivo.

**2.** Según señala el Artículo 1217 de nuestro Código Civil, 31 L.P.R.A. sec. 3404, *"[s]erá nulo el consentimiento prestado por error, violencia, intimidación o dolo."*

**3.** La opinión disidente entiende que *"[e]stamos ante un caso claro de conflicto de intereses entre la madre y el menor."* De existir tal conflicto en este caso, el tribunal de instancia podría resolverlo nombrando un defensor judicial luego de enmendarse la demanda. La posibilidad de un conflicto entre la madre y el niño no tiene nada que ver con el error procesal que hoy resolvemos.

**4.** Nuestro Tribunal Supremo ha reconocido la certeza de las pruebas científicas que muestran claramente quién es y quién no es el padre biológico de un niño. El término de caducidad de tres (3) meses desde la fecha de reconocimiento para impugnar la paternidad debe ser modificado por nuestra legislatura para considerar que un hombre, ya sea esposo, concubino o un conocido de la mujer, puede ser víctima de un cruel engaño por parte de la madre biológica. Ciertamente, ante tal situación, el hombre deberá tener un tiempo más amplio para ponderar si debe o no impugnar la paternidad una vez se determine,

mediante pruebas científicas, que él no es el padre biológico. En esa forma, el reconocimiento del niño hecho por el hombre de buena fe bajo la creencia equivocada de que él es el verdadero padre, no tendría tanta trascendencia como nuestra jurisprudencia le ha dado hasta el día de hoy. Lo.más importante es que el hombre, a.sabiendas de la realidad de los hechos, de su consentimiento para el reconocimiento del niño, libre de vicios. Sencillamente, estamos forzando una disposición de nuestro Código Civil, cuya procedencia viene de la época de Napoleón y la cual es claramente inadecuada, para resolver unos problemas sociales del presente, como lo es el de este caso. Esto equivale a que los médicos realicen cirugías a la luz de unas velas, mientras el legislador tiene en sus manos el poder de brindar luz eléctrica y eficiente para que los médicos no tengan que dar su *"cura"* a media luz. Al forzar una *"cura"* mediante el uso de un artículo del Código Civil que no estaba ni está diseñado para resolver cuestiones hoy resueltas a través de los métodos científicos, corremos el riesgo de hacerle una injusticia a un reconocedor de buena fe, y convertir a éste en una víctima que de por vida quede obligado de mantener a un hijo que no es el suyo. Igualmente, estaríamos privando al niño afectado de conocer y estar con su verdadero padre. A la inversa, estamos premiando a una mujer que a sabiendas comete fraude contra su esposo, concubino o conocido.

## VOTO DISIDENTE DE LA JUEZA DE
## APELACIONES SRA. RAMOS BUONOMO — 95 DTA 138

San Juan, Puerto Rico, a 25 de septiembre de 1996

Disiento de la sentencia dictada por la mayoría en este caso por los siguientes fundamentos.

El 4 de agosto de 1993, el apelante González presentó una demanda sobre impugnación de reconocimiento del menor Carlos Hiram González Padilla, nacido el 5 de mayo de 1993 y reconocido e inscrito por el apelante González el día 12 de mayo de 1993, alegando que era menor de edad no emancipado y que sin el consentimiento ni el conocimiento de sus padres reconoció al niño por medio de coacción y amenazas. ■

En la demanda, González Cruz indicó que para esa fecha estaba pendiente una acción penal ante el entonces Tribunal de Distrito, Sala de Toa Baja, iniciada en su contra por la parte aquí apelada sobre incumplimiento del pago de pensión alimentaria. Además, alegó que había solicitado ante dicho tribunal que se ordenara a las partes a someterse a las pruebas de sangre para determinar la paternidad. En la súplica de la demanda, González Cruz solicitó que se declarara nulo el consentimiento dado para el reconocimiento del niño y que se permitiera y ordenara al Tribunal de Distrito determinar, mediante las pruebas de sangre, si el aquí apelante es el verdadero padre del niño. En dicha demanda sólo incluyó como parte demandada a la madre del menor, representada por sus padres, por ser ésta a su vez menor de edad. No se incluyó como demandado al menor ni tampoco se le emplazó.

El 30 de diciembre de 1993, la madre del niño, representada por sus padres con patria potestad, contestó la demanda, levantando como defensas afirmativas que el reconocimiento fue voluntario y que la minoría de edad no impide que se reconozca a un hijo. Además, indicó que la acción penal por incumplimiento de pensión alimentaria, a la cual se refirió González Cruz en su demanda, se archivó el 18 de noviembre de 1993 debido a que éste aceptó que le había reconocido al niño y que continuaría satisfaciendo la pensión alimentaria provisional fijada por el tribunal hasta tanto se dilucidara la presente demanda. ■

El 28 de julio de 1994, González Cruz presentó una moción solicitando sentencia sumaria, por la única razón de que, siendo menor de edad, estaba incapacitado legalmente para reconocer al niño, indicando que se sometía a la jurisdicción del tribunal para que se ordenaran las pruebas de sangre si la parte demandada así lo reclamaba.

El 24 de octubre de 1994, se notificó a las partes una orden dictada por el tribunal de instancia el 12 de agosto del mismo año en la cual se ordenó a la parte demandada replicar a la moción de sentencia sumaria y se ordenó, además, a las partes someterse a las pruebas para determinar la paternidad del niño. El 8 de noviembre de 1994, la demandada compareció mediante moción en oposición a sentencia sumaria y solicitud de desestimación por falta de jurisdicción debido a que el niño, siendo parte indispensable en el pleito, no había sido incluido en el mismo dentro del término de caducidad. En igual fecha, la demandada solicitó oportunamente la reconsideración de la orden sobre

las pruebas de paternidad toda vez que tratando la acción de una impugnación de reconocimiento, lo procedente era que el demandante demostrara que el reconocimiento estuvo viciado por existir violencia, intimidación o error.

El 28 de noviembre de 1994, González Cruz presentó una moción aceptando que el menor no había sido emplazado ni constaba su nombre en el epígrafe, pero que el menor había sido incluido en el texto de la demanda por lo que procedía que se permitiera enmendar la demanda para incluirlo *"formalmente"*. Además, solicitó que, tratándose de una situación en que un menor no emancipado había reconocido a un niño, se prosiguiera con las pruebas de sangre para determinar la filiación.

El 8 de febrero de 1995, González Cruz le pidió permiso al tribunal *a quo* para emplazar al menor y presentar una demanda enmendada.

Finalmente, el 27 de marzo de 1995, el tribunal de instancia dictó la sentencia aquí apelada, desestimando el caso por falta de jurisdicción sobre el niño ya que éste no había sido demandado ni emplazado dentro del término de caducidad que se establece en la ley.

## II

En primer lugar, debemos señalar que estamos ante un recurso en el cual nos toca analizar la impugnación del reconocimiento de un menor. El verdadero propósito de esta acción es impugnar la validez del acto de reconocimiento. Le corresponde demostrar al demandante apelante que dicho reconocimiento estuvo viciado por razón de la existencia de violencia, intimidación o error. En consecuencia, debe posponerse cualquier otra acción hasta tanto el demandante haga una demostración al respecto. *Oaks Reyes v. Ortiz Aponte,* (Sentencia) ___ D.P.R. ___ (1994), **94 J.T S. 69**, a la pág. 11886.

El Tribunal Supremo ha establecido que la acción de impugnación del reconocimiento que tiene como base el vicio en el consentimiento prestado procede cuando el impugnador demuestra a satisfacción del tribunal que actuó movido por error o debido a violencia o intimidación, siendo inmaterial si el reconocido es o no hijo del impugnador. En *Almodóvar v. Mendéz,* ___ D.P.R. ___ (1990), **90 J.T.S. 11**, a la pág. 7364, el tribunal citando a Albaladejo expresó lo siguiente:

*"Huelga insistir en que queda por completo al margen la cuestión de si el reconocido es o no hijo del reconocedor. No se trata de que con violencia o intimidación se obligó a reconocer a un no hijo. Se trata simplemente de que, demostrando que se reconoció intimidado o violentado, prosperará la impugnación del reconocimiento, sin tener que referirse para nada al asunto de filiación del reconocido."*

Resulta obvio, que la sentencia dictada por la mayoría se apoya en los resultados de unos exámenes de sangre de exclusión de paternidad (prueba de DNA) que, sin lugar a dudas, son totalmente improcedentes en derecho dentro de una acción de impugnación de reconocimiento. *Almódovar v. Méndez, supra.* Esto independientemente de la validez o certeza de los resultados que goza la prueba, y la validez que pueda tener en el caso que nos ocupa y que la mayoría utiliza para sustentar su posición. Basta leer en su totalidad el último párrafo a la pág. 9 de la sentencia como prueba de lo antes dicho. En vista de ello, entendemos que es prueba impertinente que no debió ser tomada en consideración por la mayoría al momento de emitir la decisión.

A tenor con esta interpretación en Almodóvar, *supra,* a la pág. 7365 el Tribunal Supremo resolvió que *"[l]a acción afirmativa del reconocimiento presupone un acto voluntario e informado. Es debido a ello que,... se ha aceptado por la doctrina y los tribunales de justicia que ese reconocimiento puede ser impugnado a base de que... el mismo se prestó de manera involuntaria o si voluntariamente, 'mal informado'. Para ello no es necesario traer prueba que destruya la relación biológica de padre e hijo".* Por la transcendencia del acto de reconocimiento, aquél que reconoce un *"hijo, tiene el deber de asegurarse en los casos"* que tiene alguna duda respecto a su paternidad de que el niño es verdaderamente suyo antes de reconocerlo. *Id.*

Por si bien es cierto que la demanda se presentó dentro el término de caducidad de tres meses a partir de la inscripción del nacimiento en el Registro según el Artículo 117 del Código Civil, 31

L.P.R.A. sec. 465, Almodóvar, *supra*, sin embargo, la falta de parte indispensable, en este caso el menor, impedía que el tribunal asumiera jurisdicción por haber caducado el plazo para la acción. Nos explicamos.

En *Oaks Reyes v. Ortiz Aponte*, (Sentencia) ___ D.P.R. ___ (1994), **94 J.T.S. 69**, a las págs. 11885, 11886, el Tribunal Supremo resolvió que en una acción de impugnación de paternidad el menor es parte indispensable toda vez que es el único posible perjudicado en el pleito. El caso de *Meléndez Gutiérrez v. E.L.A., 113 D.P.R. 811, a las págs. 15, 816 explica que:*

"......*de acuerdo con las disposiciones de la Regla 16.1 y de la Regla 18 de las de Procedimiento Civil de 1979, la omisión de una parte indispensable, aunque es motivo para desestimar un pleito, **no constituye impedimento para que, a solicitud de la parte interesada,** el tribunal pueda conceder la oportunidad de traer al pleito a la parte originalmente omitida, siempre y cuando el tribunal pueda adquirir jurisdicción sobre la misma.*" (Énfasis nuestro).

Un tribunal adquiere jurisdicción sobre una persona solamente mediante el emplazamiento o la sumisión voluntaria de ésta. González Cruz acepta en su recurso que el niño no fue emplazado más alega que ello "*es una cuestión de pura formalidad.*" ▮ La mayoría resolvió que en el caso de marras "*se desprende del epígrafe, las alegaciones y la súplica de la demanda, e interpretando éstas liberalmente con el fin de hacer justicia, que el demandante incluyó a todas las partes para hacer valer su reclamación impugnando su consentimiento.... [C]umple cabalmente con el propósito de informar a los demandados, a grandes rasgos, las reclamaciones en su contra y a quiénes pertenecen estas reclamaciones. Estos estuvieron razonablemente prevenidos de lo que se reclama.*" No estamos de acuerdo.

La jurisprudencia exige un cumplimiento estricto cuando se trata de los requisitos del emplazamiento y de no cumplirse con éstos, el tribunal no adquiere jurisdicción. *Rodríguez v. Nasrallah,* 118 D.P.R. 93, 98 (1986). El hecho de que el niño en este caso no pueda defenderse por sí mismo ante el tribunal, no significa que su emplazamiento constituya una mera formalidad. Por el contrario nuestro ordenamiento sí exige que sea emplazado.

Estamos en desacuerdo con la posición asumida por la mayoría respecto a que el emplazamiento de la madre dentro del término de tres meses cumplió con el requisito de emplazar al menor. Estamos ante un caso claro de conflicto de intereses entre la madre y el menor. Correspondía emplazar al niño y nombrarle un defensor judicial. A tales efectos, nuestro ordenamiento dispone que siempre que en algún asunto ambos padres o alguno de ellos tenga un interés opuesto al de sus hijos no emancipados, el tribunal nombrará a éstos un defensor que los represente en juicio. Artículo 160 del Código Civil, 31 L.P.R.A. sec. 617. La acción instada por González plantea un conflicto de intereses entre el menor y su madre. Se intenta dejar sin efecto el reconocimiento de un hijo, es decir, un cambio en el estado civil hasta ahora asentado. Es la mejor práctica para un tribunal en estas circunstancias el nombrarle al menor un defensor judicial máxime en este caso donde la madre del menor está representada a su vez por sus padres (abuelos del menor) y que también es ella menor de edad. Véase *Robles v. Guevárez,* 109 D.P.R. 563, 568 (1980), en el cual se consideró necesario el nombramiento de un defensor judicial para el menor cuando la madre era quien lo representaba en un caso de impugnación de paternidad. Véase también *Chabrán v. Méndez,* 74 D.P.R. 768, 786 (1953).

El término para la acción de impugnación de reconocimiento es de caducidad. El plazo al amparo del Artículo 117 del Código Civil, 31 L.P. R.A. sec 465, y del caso de *Almodóvar v. Méndez Román,* ___ D.P.R. ___ (1990), **90 J.T.S. 11,** es de tres meses. La mayoría sostiene que si bien no se incluyó en el epígrafe al menor dentro del término de tres meses, esto no suscita una lesión de derecho. Entienden que se debió permitir enmendar la demanda bajo la Regla 13.1 de Procedimiento Civil, 32 L.P.R.A., Ap.. III., para corregir un "*error de forma*" e incluir al niño como parte demandada. Comparan esta ituación con el caso de *Reyes Castillo v. Cantera Ramos,* ___ D.P.R. ___ (1966), **96 J.T.S. 9,** donde varios demandantes reclamaron daños y perjuicios a propiedades gananciales, sin incluir como demandante y parte indispensable a la sociedad legal de gananciales. Pasado el término prescriptivo, el Tribunal Supremo resolvió que brindándole una interpretación liberal y razonable de todas las alegaciones en conjunto, tomando en consideración el epígrafe y la súplica, procedía el concluir que los demandantes habían hecho reclamaciones en favor de sus respectivas sociedades de

bieses gananciales. En lo aquí pertinente, somos de la opinión que el caso de Reyes, *supra*, no es aplicable a los hechos ante nuestra consideración. No es una reclamación de daños y perjuicios, es una controversia sobre el estado civil de un menor. Tampoco hay intereses encontrados entre las partes y las sociedades de gananciales en el caso de Reyes, *supra*. Si bien es cierto que la sociedad legal de gananciales es una entidad que tiene personalidad jurídica propia no es menos cierto que es una entidad económica familiar *sui generis*, de características especiales, incluso que no tiene el mismo grado de personalidad jurídica que las sociedades ordinarias y entidades corporativas. Reyes Castillo, a la pág. 645. Es por esta razón y porque lo único que se había omitido en el epígrafe de la demanda era la frase *"y en representación de la sociedad de bienes gananciales compuesta por ambos"*, que el Tribunal Supremo decide, que vista en su totalidad la demanda, no privaría a la sociedad legal de gananciales de la reclamación perteneciente a ésta. Es incuestionable el interés apremiante en que se establezca y no esté sujeto a incertidumbre el status civil de un menor. Por eso es un plazo de caducidad y no un término de prescripción.

Al establecer los plazos de caducidad del Artículo 117 el Código Civil, 31 L.P.R.A. sec. 465, el legislador hizo un balance entre el derecho de un individuo a deshacer una realidad jurídica inexacta y el derecho de una persona·a la seguridad de su estado civil, así como el interés del Estado en la estabilidad de las relaciones filiatorias. *Almodóvar v. Méndez Román, supra*. Si el legislador hizo este balance de intereses, tenemos que concluir que se debió demandar y emplazar al menor dentro del término de caducidad de tres meses. El niño fue reconocido e inscrito por González Cruz el día 12 de mayo de 1993, y no es hasta el 8 de febrero de 1995 que mediante moción solicitó que se emplazara al menor y se enmendara la demanda para incluirlo como parte demandada.

Es doctrina harto conocida que un plazo de caducidad es siempre extintivo del derecho a la causa de acción. Dicho plazo no admite causas de suspensión ni de interrupción del término porque el efecto extintivo es radical y automático una vez se ha incurrido en la caducidad; la acción no puede revivir. *Ortiz Rivera v. Sucn. González Martínez*, 93 D.P.R. 62, 599 (1966).

Ante estas circunstancias, el tribunal *a quo* no tenía más remedio que desestimar el pleito por falta de jurisdicción sobre una parte indispensable. Recordemos que la falta de jurisdicción no puede ser subsanada ni el tribunal puede abrogársela, teniendo los tribunales el ineludible deber de examinar su propia jurisdicción, así como aquella del foro de donde prodece el recurso. *Vázquez v. A.R.P.E.*, ___ D.P.R. ___ (1991), **91 J.T.S. 53**, a las págs. 652, 8661. Por ello la parte apelante tampoco podía ampararse en la Regla 13.3 de las de Procedimiento Civil ■ para adquirir jurisdicción sobre el menor.

Es norma conocida que la caducidad no corre contra lo inexistente. *Almodóvar v. Méndez Román, supra*, a la pág. 7368. En el presente caso, el apelante no ha dado indicio alguno de que la coacción y las amenazas que alega haber sufrido sean de tal grado que han producido la ausencia total de consentimiento y tampoco que aún continúan, de manera que el plazo no haya comenzado a decursar. Por el contrario --sostiene que presentó su demanda correctamente por lo que podemos presumir que la alegada coacción y amenaza, si la hubo, cesaron. Por lo tanto, el Tribunal de Primera Instancia resolvió correctamente al desestimar la acción instada por el apelante.

Por los fundamentos antes expuestos, disentimos de la sentencia dictada por la mayoría, y entendemos que se debió confirmar la sentencia apelada.

**JEANNETTE RAMOS BUONOMO**
**Jueza de Apelaciones**

**ESCOLIOS VOTO DISIDENTE DE LA JUEZA DE**
**APELACIONES SRA. RAMOS BUONOMO — 95 DTA 138**

**1.** A la fecha del reconocimiento, González Cruz tenía diecinueve años de edad. La madre del niño reconocido también era menor de edad.

**2.** Hacemos constar que González Cruz no refutó esta alegación en sus escritos posteriores.

**3.** Escrito de Apelación, a la pág. 11.

**4.** Regla 13.3. Retroactividad de las enmiendas. Siempre que la reclamación o defensa expuesta en la alegación enmendada surgiere de la conducta, acto, omisión o evento expuesto en la alegación original, las enmiendas se retrotraerán a la fecha de la alegación original. Una enmienda para sustituir la parte contra la cual se reclama se retrotraerá a la fecha de la alegación original si, en adición a cumplirse con el requisito anterior, y dentro del término prescriptivo, la parte que se trae mediante enmienda (1) tuvo conocimiento de la causa de acción pendiente, de tal suerte que no resulta impedido de defenderse en los méritos, y (2) de no haber sido por un error en cuanto a la identidad del verdadero responsable, la acción se hubiera instituido originalmente en su contra.